UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AMERISURE INSURANCE COMPANY, a Foreign corporation, individually and as subrogee and assignee of WALMART, INC. f/k/a WAL-MART STORES, INC.,

    Plaintiff,

v.

SENECA SPECIALTY INSURANCE COMPANY, a Foreign corporation, and MRK CONSTRUCTION, INCORPORATED, a Florida corporation,

    Defendants.
_____/

CASE NO. _____

**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff, AMERISURE INSURANCE COMPANY, individually, and as subrogee and assignee of WALMART, INC. f/k/a WAL-MART STORES, INC. (hereafter "AMERISURE") sues Defendants, SENECA SPECIALTY INSURANCE COMPANY (hereafter "SENECA SPECIALTY") and MRK CONSTRUCTION, INCORPORATED (hereafter "MRK") (SENECA SPECIALTY and MRK are collectively referred to as the "Defendants"), and alleges the following:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and for damages.

2. Jurisdiction is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1332 because there is a diversity of citizenship between

CASE NO. _____

AMERISURE and the Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

4. AMERISURE is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), AMERISURE is deemed to be a citizen of Michigan.

5. Upon information and belief, SENECA SPECIALTY is a New York corporation with its principal place of business in New York, New York. Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), SENECA SPECIALTY is deemed to be a citizen of New York.

6. Upon information and belief, MRK is a Florida corporation with its principal place of business in Brandon, Florida. Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), MRK is deemed to be a citizen of Florida.

7. All conditions precedent to the filing of this complaint have occurred, been performed or have been waived.

**FACTUAL ALLEGATIONS**

**A.   The Underlying Lawsuit**

8. On March 13, 2015, Raul Sardinas and Yanira Ruiz (collectively the "Claimants") filed a civil action against Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("WALMART") in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County, Florida (the "Underlying Lawsuit"), seeking damages in relation to an incident that took place at the premises known as Wal-Mart Store Number 1680, located at 15885 SW 88th Street in Miami, Florida (the "Premises"). A copy of the

CASE NO. _____

operative Amended Complaint (the "Complaint") in the Underlying Lawsuit, as filed on August 13, 2015, is attached as **Exhibit "A"**.

9. According to the allegations of the Complaint in the Underlying Lawsuit, on or about October 21, 2011, the Claimants were business invitees at the Premises when part of the ceiling collapsed and the Claimants "were pelted with large quantities of wet cement, which poured through the collapsed ceiling," causing Claimants to fall and sustain injuries (the "Incident"). *See* Ex. A at ¶ 7.

10. AMERISURE issued a general liability policy of insurance to Case Construction Company (hereafter "CASE"), the general contractor on a WALMART construction project. Pursuant to the Contract for Construction between WALMART and CASE, AMERISURE accepted the tender of defense and indemnification of WALMART.

11. On November 30, 2017, WALMART filed an Amended Third Party Complaint (the "Third Party Complaint") against MRK in the Underlying Lawsuit, alleging common law indemnity, contractual indemnity and breach of contract in relation to the Incident and the Underlying Lawsuit. A copy of the Third Party Complaint is attached as **Exhibit "B"**.

12. The Third Party Complaint alleges that, on or about August 30, 2010, CASE entered into a subcontract agreement for the performance of work at the Premises (the "Subcontract"). A copy of the Subcontract is attached to the Third Party Complaint as Exhibit "A".

13. The Third Party Complaint further alleges that, pursuant to the Subcontract, MRK was obligated to defend and indemnify WALMART in the Underlying Lawsuit and to include WALMART as an additional insured on MRK's commercial general liability policies for claims caused in whole or in part by MRK's operations and completed operations. *See* Ex. A. at ¶¶ 31 – 32.

CASE NO. _____

14.     On September 13, 2018, Final Judgments were entered in the Underlying Lawsuit in favor of the Claimants and against WALMART in the amount of $1,077,000.00 (the "Judgment Award"). Copies of the Final Judgments are attached as **Composite Exhibit "C"**.

**B.     Satisfaction of the Judgment Award by Amerisure**

15.     On October 23, 2018, WALMART and AMERISURE executed a Settlement Agreement and Assignment of Claims (the "Assignment"), whereby WALMART assigned all rights against MRK and SENECA SPECIALTY to AMERISURE, including any claims of insurance benefits, interest, attorneys' fees and costs, in exchange for AMERISURE's satisfaction of the Judgment Award, plus interest and costs, which totaled $1,199,480.70 (the "Indemnity Payment"). A copy of the Assignment is attached as **Exhibit "D"**.

16.     AMERISURE extinguished the final judgment on behalf of WALMART as an additional insured under CASE's policy with AMERISURE and pursuant to the indemnification provision in the Contract for Construction between CASE and WALMART.

**C.     The MRK Subcontract**

17.     As alleged in the Third Party Complaint, MRK entered into a Subcontract with CASE for the provision of labor, materials and services, including cement concrete paving, concrete slabs, concrete floor finishes and other concrete services, in connection with the construction of a store expansion at the Premises.

18.     The Subcontract contains the following indemnification provision:

> **§ 4.6 INDEMNIFICATION**
> **§ 4.6.1** To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner. . . against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death . . . but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts

they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder . . .

*See* Ex. B, attaching Subcontract as Exhibit "A".

> **Condition 21.**
> **(A)**   Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner, and their agents and employees, from and against any claim, cost, expense or liability (including attorneys' fees), attributable to bodily injury, sickness, disease or death, or to damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from or occurring in connection with the performance of the work by Subcontractor, its Subcontractors, or their agents or employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage or destruction is caused by the sole negligence of a party indemnified hereunder . . .
>
> **(B)**   Should Owner or any other person assert a claim or institute a suit, action or proceeding against Contractor involving the manner or sufficiency of the performance of the Subcontractor's work, Subcontractor shall upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense, and Subcontractor shall indemnify and hold harmless Contractor and its agents and employees, from and against liability, loss, damages, or expense (including but not limited to attorneys' fees) arising out of or related to such claim, suit, action or proceeding.
>
> \*\*\*

*See id.* at "Supplemental Conditions".

19.   The Subcontract also contains the following requirement that WALMART be named as an additional insured under MRK's commercial general liability policies:

> **ARTICLE 13   INSURANCE AND BONDS**
> **§13.1**  The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability as will protect the Subcontractor form claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract.
>
> | **Type of Insurance or Bond** | **Limit of Liability or bond amount** |
> |---|---|
> | Comprehensive General Liability | 2,000,000.00 |
>
> **§13.1.1**  A Certificate of Insurance, which MUST list CASE CONTRACTING COMPANY and WAL-MART STORES, INC., as additional insureds as their interests may appear, shall be additional insureds with cross liability endorsement with respect to commercial, general and automobile liability policies. . .

CASE NO. _____

\*\*\*

**§13.4**   The Subcontractor shall cause the commercial liability coverage required by the Subcontract Documents to include: (1) the Contractor, the Owner . . . as additional insureds for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's operations; and (2) the Contractor as an additional insured for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's completed operations.

\*\*\*

*See id.*

### D.   The Seneca Specialty Policy

20.   SENECA SPECIALTY issued a commercial general liability policy to MRK under policy number SGL 3000845, which was in effect from December 28, 2010 through December 28, 2011 and contains limits of liability of $2,000,000.00 in the general aggregate and $1,000,000.00 per occurrence (the "Seneca Specialty Policy"). A copy of the Seneca Specialty Policy is attached as **Exhibit "E"**.

21.   The Seneca Specialty Policy contains the following pertinent endorsements affording additional insured coverage to WALMART on a primary and con-contributory basis:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED OWNERS, LESSEES OR
CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name of Additional Insured Person(s) or Organization(s) | Location(s) of Covered Operations |
|---|---|
| **AS REQUIRED BY WRITTEN CONTRACT** | **AS REQUIRED BY WRITTEN CONTRACT** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

CASE NO. _____

**A. Section II - Who Is An Insured is** amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part by:

**1.** Your acts or omissions, or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the Insurance afforded to these additional insureds, the following, additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work including materials, parts or equipment furnished in connection with such work on the protect (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed, or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contactor or subcontractor engaging in performing operations for a principal as a part of the same project.

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
"PRIMARY/NON-CONTRIBUTORY" ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

It is understood and agreed that Insurance as provided by this policy is modified and subject to the following provisions:

Such Insurance as afforded by this policy for the benefit of the Additional Insured shall be primary insurance as respects any claim, loss or liability arising directly from the Named Insured's operations and any other insurance maintained by the Additional Insured shall be excess and non-contributory with the insurance provided herein.

**This endorsement applies as required by written contract.**
\*\*\*

*See* Ex. E.

## COUNT I: DECLARATORY JUDGMENT
**(Seneca Specialty)**

22. AMERISURE repeats and re-alleges the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

24882657.v1

CASE NO. _____

23. The SENECA SPECIALTY Policy was in full force and effect on the date of the Incident from which the Underlying Lawsuit stems.

24. Based upon the allegations in the Underlying Lawsuit and the terms of the Subcontract, the SENECA SPECIALTY Policy affords additional insured coverage to WALMART in connection with the Underlying Lawsuit on a primary and non-contributory basis.

25. A timely demand to SENECA SPECIALTY was made requesting that SENECA SPECIALTY assume its responsibilities to defend and indemnify WALMART as an additional insured under the SENECA SPECIALTY Policy in connection with the Incident and the Underlying Lawsuit.

26. SENECA SPECIALTY has failed to comply with its obligations to provide defense and indemnification to WALMART and/or has otherwise has failed to perform or acknowledge its obligations as an insurer of WALMART in connection with the Underlying Lawsuit.

27. An actual and present controversy exists between the parties as to the scope of SENECA SPECIALTY's obligations to defend and indemnify WALMART in the Underlying Lawsuit.

**WHEREFORE**, AMERISURE respectfully requests this Honorable Court find and declare that the SENECA SPECIALTY Policy affords primary and non-contributory coverage for WALMART in the Underlying Lawsuit, that SENECA SPECIALTY was obligated to defend and indemnify WALMART in the Underlying Lawsuit on a primary and non-contributory basis and without any contribution from AMERISURE, and for such other relief that this Honorable Court deems just, proper and equitable.

CASE NO. _____

## COUNT II: BREACH OF CONTRACT
**(Seneca Specialty)**

28. AMERISURE repeats and re-alleges the allegations contained in paragraphs 1 through 27 above as if fully set forth herein.

29. The SENECA SPECIALTY Policy was in full force and effect on the date of the Incident from which the Underlying Lawsuit stems.

30. SENECA SPECIALTY, through the SENECA SPECIALTY Policy, is obligated to defend and indemnify its insured, WALMART, as against claims of bodily injury and property damage such as those asserted in the Underlying Lawsuit.

31. SENECA SPECIALTY's failure and refusal to defend and indemnify WALMART in the Underlying Lawsuit is without legal basis.

32. All rights under the SENECA SPECIALTY Policy were transferred and assigned to AMERISURE under the Assignment.

33. AMERISURE is entitled to indemnification from SENECA SPECIALTY for funds expended, including attorneys' fees, costs, disbursements, and other expenses incurred by AMERISURE in defending WALMART in the Underlying Lawsuit and satisfying the Indemnity Payment and Final Judgment entered against it in the Underlying Lawsuit.

34. AMERISURE has sustained, and will continue to sustain, damages as a result of SENECA SPECIALTY's breach of the contract of insurance, including, but not limited to, the costs and expenses attendant to the institution and maintenance of this action.

**WHEREFORE**, AMERISURE respectfully requests this Honorable Court enter judgment in its favor and against Seneca Specialty, as follows:

(a) that SENECA SPECIALTY is obligated to pay AMERISURE all damages incurred by reason of SENECA SPECIALTY's breach of the contract of insurance,

CASE NO. _____

          including, but not limited to the costs and expenses attendant to the institution and maintenance of this action;

(b)     that SENECA SPECIALTY is obligated to reimburse AMERISURE for all attorneys' fees, costs, disbursements and other expenses incurred to date, plus interest, in the defense of WALMART and satisfaction of the Indemnity Payment in the Underlying Lawsuit;

(c)     that this Honorable Court retain jurisdiction to grant supplemental relief, including but not limited to claims for damages and/or bad faith, as appropriate; and

(d)     Such other relief as this Honorable Court deems just, proper, and equitable.

## COUNT III: CONTRACTUAL INDEMNIFICATION
### (MRK)

35.     AMERISURE repeats and re-alleges the allegations contained in paragraphs 1 through 21 above as if fully set forth herein.

36.     The Subcontract contains two separate and distinct indemnification clauses that run to WALMART as the Owner of the Project – which the Prime Contract defines as Wal-Mart Supercenter (SUP), EXP #1680-03, Kendall, FL and the Subcontract defines as Wal-Mart Expansion # 1680-03.

37.     The first indemnification clause, located at Section 4.6 of the Subcontract states, in pertinent part:

> **§ 4.6.1 To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, Contractor, Architect, Architect's Consultants, and agents and employees of any of them against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Subcontractor's Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than to the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or**

**indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.** Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.6.

4.6.2 In claims against any person or entity indemnified under this Section 4.6 by an employee of the Subcontractor, the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section 4.6.1 shall not be limited by a limitation on the amount or type of damages, compensation or benefits payable by the Subcontractor or the Subcontractor's Sub-subcontractors under workers' compensation acts, disability benefit acts or other employee benefit acts.

38. The second indemnification clause, found at Condition 21 of the Subcontract states:

(A) **Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner, and their agents and employees, from and against any claim, cost, expense or liability (including attorneys' fees), attributable to bodily injury, sickness, disease or death, or to damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from or occurring in connection with the performance of the work by Subcontractor, its Subcontractors, or their agents or employees, whether or not caused in part by the active or passive negligence or other fault of a party indemnified hereunder;** provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage or destruction is caused by the sole negligence of a party indemnified hereunder. Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.

(B) Should Owner or any other person assert a claim or institute a suit, action or proceeding against Contractor involving the manner or sufficiency of the performance of the Subcontractor's work, Subcontractor shall upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractor's expense, and Subcontractor shall indemnify and hold harmless Contractor and its agents and employees, from and against liability, loss, damages, or expense (including but not limited to attorneys' fees) arising out of or related to such claim, suit, action or proceeding.

(C) In the event of any such loss, expense, damage or injury, or if any claim or demand for such damages is made against Contractor, its agents, servants and employees, Contractor may withhold from any payment due or hereafter to become due to Subcontractor under the terms of this contract, an amount sufficient in its judgment to protect and indemnify it form any and all injury, or Contractor in its discretion, may require the Subcontractor to furnish a surety bond satisfactory to Contractor guaranteeing such protection, which bond shall be furnished by the Subcontractor within five days after written demand has been made therefore.

> (D)  Subcontractor acknowledges that specific consideration apart from the Subcontract Sum recited herein, has been received by it for this indemnification and any indemnity provision set forth in AIA Form A401.
>
> (E)  The indemnity provision set forth herein and any indemnity provision set forth in AIA Form A401 are subject to, and shall not exceed the Subcontract sum plus or minus the amount of all approved change orders thereto.

39. The Subcontract also contains an indemnification clause, which "flows through" to the Subcontract from the Prime Contract. Specifically, Article 1, § 1.2 of the Subcontract defines the Subcontract documents as follows:

> The Subcontract Documents consist of (1) this Agreement, (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the Contract Documents enumerated therein; …"  Also, "An enumeration of the Subcontract Documents, other than modifications issued subsequent to the execution of this Agreement, appears in Article 16.

40. A more detailed "flow through" clause is found at Article 2 (Mutual Rights and Responsibilities) of the Subcontract which make the terms of the Prime Contract binding on the Subcontractor as follows:

> The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of AIA Document A201-2007 apply to this agreement pursuant to Section 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and responsibilities that the Owner, under such documents, assumes toward the contractor, **and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the contractor, under such documents, assumes toward the Owner and Architect**.

41. Pursuant to these clauses, Article 13, Section 13.1 of the Prime Contract is binding on MRK. Article 13, Section 13.1 of the Prime Contract states, in pertinent part:

> Contractor shall indemnify, protect, defend and hold harmless Owner and its affiliates and its and their respective directors, stockholders, members, managers, officers, employees, agents, consultants, representatives, successors, transferees and assigns (collectively, the "Owner Indemnified Parties") from and against any and all Damages arising from, relating to or associated with any actual or alleged (i) actions or omissions of Contractor or its employees, agents, representatives, Subcontractors, or Sub-subcontractors, or any employees, agents, representatives or contractors of any of the foregoing, in connection with the performance of the Work hereunder, including, without limitation, (A) any lien, security interest, claim or encumbrance in favor of any person or entity making a claim by

24882657.v1

reason of having provided labor, materials or equipment relating to the Work, and (B) any injury, damage, harm or loss arising from, relating to or in any manner connected with the "release" or "threatened release" of Hazardous Materials, contaminants, oil or radioactive materials from any Owner premises as a result of or connected with Contractor's performance of the Work, even if not discovered or alleged until after the termination of the Contract, and/or (ii) any breach, violation or default by Contractor or its employees, agents, representatives, Subcontractors, or Sub-subcontractors, or any employees, agents, representatives or contractors of any of the foregoing, of Contractor's obligations under the Contract Documents, including, without limitation, any violation of any law, statute, ordinance, order, rule of regulation, including, without limitation, any Environmental Law, the Stormwater Requirements and those set forth in Article 12. Contractor's obligations to indemnify and defend the Owner Indemnified Parties are not entitled to indemnification under this Contract. Further, in the event that it is ultimately determined by a final judicial decision from which there is no further right to appeal that a portion of the fault is attributable to the Owner Indemnified Parties, Contractor's obligations on the indemnity will be proportional to the proportional fault of Contractor and the Owner Indemnified Parties.

42. Based on the above, there was clear and manifest intent by CASE and MRK that the Subcontract primarily and directly benefit WALMART.

43. The above defense and indemnity obligations were triggered as the Claimants' claims in and out of the Underlying Lawsuit sought to hold WALMART liable for MRK's negligence.

44. WALMART repeatedly demanded MRK defend, indemnify, hold harmless, and exonerate WALMART for such damages.

45. MRK has failed and refused to defend, indemnify, hold harmless, and exonerate WALMART per the terms of the Subcontract and Prime Contract.

46. AMERISURE has suffered damages by virtue of the fact that WALMART was required to retain counsel to defend against the Claimants' claims in and out of the Underlying Lawsuit and to compensate the Claimants for MRK's negligence.

47. Pursuant to the express terms of the Subcontract and the Prime Contract, WALMART is entitled to contractual indemnity from MRK for all damages incurred in the Underlying Lawsuit.

CASE NO. _____

48. As a direct and proximate result of MRK's failure to defend, indemnify, hold harmless, and exonerate WALMART, AMERISURE has suffered and will continue to suffer damages which WALMART is specifically entitled to recover under the Subcontract, including but not limited to the $1,119,480.70 that AMERISURE paid as a result of the final judgment, pre and post-judgment interest on this amount, attorneys' fees and costs incurred in the defense of WALMART in the Underlying Lawsuit and AMERISURE'S attorneys' fees and costs in bringing this action.

**WHEREFORE**, AMERISURE respectfully requests that this Honorable Court enter judgment against MRK for contractual indemnity for third-party beneficiary and award AMERISURE its damages, pre and post judgment interest, attorneys' fees and cost incurred in WALMART's defense of the Underlying Lawsuit and attorneys' fees and costs incurred in bringing this action, and such other relief as this Court deems just and appropriate.

## COUNT IV: COMMON LAW INDEMNIFICATION
### (MRK)

49. AMERISURE adopts and re-alleges Paragraphs 1 through 21 above as if fully set forth herein.

50. WALMART engaged the services of CASE, as a general contractor, who engaged the services of MRK, as a subcontractor, to pump concreate on the Project.

51. Therefore, the relationship between WALMART and MRK is a special relationship.

52. On or about August 23, 2018, a jury returned a verdict in the Underlying Lawsuit finding that there was negligence "on the part of WAL-MART STORES, INC. and/or MRK Construction, Inc. which was a legal cause of loss, injury or damage to [the Claimants]."

CASE NO. _____

53. WALMART had engaged in no active wrongdoing and was wholly without fault with respect to the Incident. As such, MRK was wholly with fault with respect to the Incident.

54. Any liability of WALMART in the Underlying Lawsuit was solely vicarious, technical, contractual, or derivative of MRK.

55. Accordingly, AMERISURE is entitled to be indemnified by MRK for $1,119,480.70 that AMERISURE paid in Judgment, pre and post judgment interest on this amount, attorneys' fees in both the Underlying Lawsuit and this action.

**WHEREFORE**, AMERISURE respectfully requests that this Honorable Court enter judgment against MRK for common law indemnity, and award AMERISURE its damages, pre and post judgment interest, attorneys' fees and costs incurred in the defense WALMART of the Underlying Lawsuit and well as attorneys' fees and costs incurred in bringing this action, and such other relief as this Honorable Court deems just and appropriate.

### COUNT V:  BREACH OF CONTRACT / FAILURE TO PROCURE
### (MRK)

56. AMERISURE adopts and re-alleges Paragraphs 1 through 21 above as if fully set forth herein.

57. Article 1, § 1.2 of the Subcontract states, in pertinent:

> The Subcontract Documents consist of (1) this Agreement, (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor and the Contract Documents enumerated therein; …"  Also, "An enumeration of the Subcontract Documents, other than modifications issued subsequent to the execution of this Agreement, appears in Article 16.

58. The "flow through" provision found at Article 2 (Mutual Rights and Responsibilities) of the Subcontract states, in pertinent part:

> The Contractor and Subcontractor shall be mutually bound by the terms of this Agreement and, to the extent that the provisions of AIA Document A201-2007 apply to this agreement pursuant to Section 1.2 and provisions of the Prime Contract apply to the Work of the Subcontractor, the Contractor shall assume toward the Subcontractor all obligations and

24882657.v1

responsibilities that the Owner, under such documents, assumes toward the contractor, **and the Subcontractor shall assume toward the Contractor all obligations and responsibilities which the contractor, under such documents, assumes toward the Owner and Architect.**

59.     Section 20.2 Insurance Policy Limits and Coverages of the Prime Contract that are binding on MRK state, in pertinent part:

> 20.2.1   Contractor shall carry the insurance coverage as specified below with the minimum limits set forth herein . . . .
> …
>
> 20.2.2.2  Insurance coverage required to be carried by Contractor pursuant to Section 20.1 and as specified below shall be written for not less than the following limits, or greater if required by law:
> …
>
> (iii)     Commercial General Liability insurance, including liability for the Project and blanket coverage, Personal and Advertising Injury, Products-Completed Operations (which shall remain in effect for two (2) years after final acceptance of the Work by Owner), Medical Payments, Bodily Injury, and Property Damage, with minimum limits of $2,000,000 per occurrence, $3,000,000 general aggregate and completed operations aggregate, $500,000 personal and advertising injury per occurrence, and $5,000 medical expense. Contractor and, as applicable, Subcontractors and Sub-subcontractors shall obtain an endorsement to each insurance policy to provide fresh per occurrence and aggregate limits for each location and provide express coverage for punitive damages where permitted by law.  Contractor and, as applicable Subcontractors and Sub-subcontractors shall cause each insurance company issuing completed operations coverage as required herein to include Owner and its subsidiaries, affiliates, officers, directors, employees and agents as "additional insureds" with respect to such completed operations coverage.  Such Commercial General Liability insurance shall also contain contractual liability coverage with the same limits and aggregates specified above, insuring all liability assumed by Contractor pursuant to this Contract.  This insurance shall not be self-funded, collateralized or based on any type of fronting arrangement, or issued through a captive insurance company.
> …
>
> 20.2.2.3  Contractor shall provide to owner before commencement of the Work (and within twenty-four (24) hours of award of the Contract), and at least 30 days prior to the expiration of a policy or policies of insurance in effect during the term of this Contract, a certificate or certificates of insurance evidencing all required insurance in the Contract Documents which are acceptable to Owner.  Contractor shall retain copies of all certificates of insurance provided by Subcontractors and Sub-subcontractors and, if requested by Owner, shall promptly provide such certificates of insurance to Owner.  All certificates, among other things, shall:
>
> (i)      Show Wal-Mart Stores, Inc. its subsidiaries and affiliates as a certificate holder and Wal-Mart's address as 2001 S.E. 10th Street, Bentonville, Arkansas 72716

CASE NO. _____

(ii)    Show Contractor, Subcontractors or Sub-subcontractors as the named insured.

(iii)   Show the names of the insurance companies providing each coverage, their addresses, the policy numbers of each coverage, and policy dates of each coverage.
…

(vi)    Show that each insurance company named Wal-Mart and its subsidiaries, affiliates, officers, directors, employees, and agents as additional insureds in each insurance policy.

60.   Article 13 of the Subcontract regarding Insurance and Bonds states, in pertinent part:

§13.1  The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability as will protect the Subcontractor from claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract.

| Type of Insurance or Bond | Limit of Liability or bond amount |
|---|---|
| Workers Compensation | 1,000,000.00 |
| **Comprehensive General Liability** | **2,000,000.00** |
| Comprehensive Auto Liability | 2,000,000.00 |

§13.1.1  A Certificate of Insurance, which MUST list CASE CONTRACTING COMPANY and WAL-MART STORES, INC., as additional insureds as their interests may appear, shall be additional insureds with cross liability endorsement with respect to commercial, general and automobile liability policies, and PROOF of Workman's Compensation Insurance IN YOUR COMPANY'S NAME must be provided within 7 days of contract date.
…

§13.4  The Subcontractor shall cause the commercial liability coverage required by the Subcontract Documents to include: (1) the Contractor, the Owner, the Architect and Architect's consultants as additional insureds for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's operations; and (2) the Contractor as an additional insured for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's completed operations.

61.   There was clear and manifest intent by CASE and MRK that the Subcontract primarily and directly benefit WALMART as the owner.

62.   MRK breached the Subcontract as it failed to procure a Commercial General Liability policy with $2,000,000 limit of liability and listing WALMART as an additional insured.

CASE NO. _____

63. As a direct and proximate result of such breach, AMERISURE has suffered and will continue to suffer damages which it is specifically entitled to recover under the Subcontract, including but not limited to the $1,119,480.70 AMERISURE paid in Judgment, pre and post judgment interest on these amounts, attorneys' fees and costs incurred in the Underlying Lawsuit and attorney's fees and costs in bringing this action.

**WHEREFORE**, AMERISURE respectfully requests that this Honorable Court enter judgment against MRK for breach of third-party beneficiary contract, and award AMERISURE its damages, pre and post judgment interest, attorneys' fees and costs incurred in the Underlying Lawsuit and its attorneys' fees and costs in bringing this action, and such other relief as this Honorable Court deem just and proper.

Dated: January 31, 2020
West Palm Beach, Florida

Respectfully submitted,

*/s/ Dustin C. Blumenthal*
Dustin C. Blumenthal, Esq.
Florida Bar No. 083799
E-mail: dblumenthal@goldbergsegalla.com
Maura Krause, Esq.
Florida Bar No. 019082
E-mail: mkrause@goldbergsegalla.com

**GOLDBERG SEGALLA LLP**
*Counsel for Amerisure Insurance Co.*
222 Lakeview Avenue, Suite 800
West Palm Beach, FL 33401
Tel:   (561) 618-4450
Fax:   (561) 618-4549