UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-20442-CIV-MORENO**

AMERISURE INSURANCE COMPANY,

    Plaintiff,

vs.

SENECA SPECIALTY INSURANCE COMPANY and MRK CONSTRUCTION INCORPORATED,

    Defendants.
_____/

## **ORDER GRANTING SENECA'S MOTION TO DISMISS**

In this insurance coverage dispute, Plaintiff Amerisure Insurance Company and Defendant Seneca Specialty Insurance Company disagree as to whether an "additional insured" endorsement in a Seneca insurance policy—issued to Defendant MRK Construction Incorporated, a subcontractor on a Walmart construction project—extends liability coverage to Walmart, Inc.

Amerisure, as the assignee of Walmart's rights against Seneca and MRK, asserts a breach of contract claim against Seneca. This claim alleges that Walmart is a covered as an "additional insured" under the Seneca Policy, and thus Amerisure must be indemnified for the judgment against Walmart in an underlying state court lawsuit. That lawsuit alleged that Walmart alone was directly negligent for the plaintiffs' injuries—which stemmed from MRK's work at the Walmart.

Seneca moves to dismiss the breach of contract claim on grounds that the Policy only covers Walmart as an "additional insured" for Walmart's *vicarious* liability premised upon MRK's *direct* negligence. Seneca thus argues that it does not have a duty to defend Amerisure because liability in the state court case was premised only on Walmart's *direct* negligence.

For the reasons explained below, Seneca's Motion to Dismiss **(D.E. 11)** is **GRANTED**. Accordingly, the breach of contract claim in Count 2 is **DISMISSED**.

## I. BACKGROUND

### A. THE INCIDENT

The story of this insurance coverage dispute began at a Walmart store in October 2011. Upon entering a Walmart in Miami, a family was struck by large quantities of wet cement that had poured through a gap in the ceiling above them. (*See* D.E. 1 at ¶¶ 8–9; D.E. 4-1 at ¶ 7.) Seeking damages for their injuries, the family filed suit against Walmart in state court in October 2015. *Id.* The complaint asserted three negligence claims and two loss of consortium claims against Walmart, who was the lone defendant. The complaint alleged that Walmart was directly negligent by, among other reasons, failing to maintain its store in a reasonably safe condition and failing to warn the plaintiffs of the dangerous condition. (*See* D.E. 4-1.) In September 2018, a Final Judgment was entered against Walmart in excess of $1 million. (*See* D.E. 1 at ¶ 14; D.E. 4-3.)

### B. WALMART'S ASSIGNMENT OF RIGHTS TO AMERISURE

In October 2018, Walmart and the Plaintiff in this case, Amerisure Insurance Company, entered into a Settlement Agreement and Assignment of Claims in which Amerisure agreed to satisfy the judgment against Walmart. (*See* D.E. 1 at ¶ 15; D.E. 4-4.) In exchange, Walmart assigned to Amerisure the rights that Walmart had against both the subcontractor on the concrete project, Defendant MRK Construction, Incorporated ("MRK"), and MRK's insurer, Defendant Seneca Specialty Insurance Company ("Seneca"). *Id.* The rights assigned to Amerisure included claims against MRK and Seneca for insurance benefits, interest, attorneys' fees, and costs. *Id.*

### C. AMERISURE AGREES TO INDEMNIFY WALMART

Before the underlying incident, Walmart entered into a contract with Case Construction Company ("Case"), who would serve as the general contractor on the construction project. (D.E. 1 at ¶ 10.) Case had a general liability insurance policy with Amerisure. *Id.* Under the contract

between Case and Walmart, Amerisure accepted the tender of defense and indemnification of Walmart. *Id.* Eventually, Amerisure extinguished the judgment against Walmart as an "additional insured" under Case's policy with Amerisure, and also under the indemnification provision in the construction contract between Case and Walmart. *Id.* at ¶ 16.

### D. THE SUBCONTRACT BETWEEN CASE AND MRK

Also before the underlying incident, Case entered into a construction subcontract with MRK for the performance of work at the Walmart store. *Id.* at ¶ 12. Article 13 of this subcontract required MRK to "purchase and maintain" comprehensive general liability insurance, in the amount of $2,000,000.00, to protect MRK from claims that "may arise out of, or result from" MRK's "operations and completed operations under the Subcontract":

> ARTICLE 13 INSURANCE AND BONDS
> § 13.1 The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability as will protect the Subcontractor from claims that may arise out of, or result from, the Subcontractor's operations and completed operations under the Subcontract:
>
> | Type of Insurance or bond | Limit of liability or bond amount ($0.00) |
> |---|---|
> | Workers Compensation | 1,000,000.00 |
> | Comprehensive General Liability | 2,000,000.00 |
> | Comprehensive Auto Liability | 2,000,000.00 |

(D.E. 4-2 at 21.) The subcontract also required MRK to "cause the commercial liability coverage" to include Walmart (*i.e.* the "Owner") as an additional insured for "claims caused in whole or in part by" MRK's negligent acts or omissions during its operations:

> § 13.4 The Subcontractor shall cause the commercial liability coverage required by the Subcontract Documents to include: (1) the Contractor, the Owner, the Architect and the Architect's consultants as additional insureds for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's operations; and (2) the Contractor as an additional insured for claims caused in whole or in part by the Subcontractor's negligent acts or omissions during the Subcontractor's completed operations.

*Id.* And finally, Schedule A to the subcontract added subparagraph 13.1.1, which required MRK to list Walmart as an additional insured on MRK's Certificate of Insurance:

> ARTICLE 13 – INSURANCE AND BONDS
>
> 13.1 The Subcontractor shall purchase and maintain Insurance of the following types of coverage and limits of liability
>
> Add the following Subparagraphs:
>
> 13.1.1 A Certificate of Insurance, which MUST list CASE CONTRACTING COMPANY and WAL-MART STORES, INC., as additional insureds as their interests may appear, shall be additional insureds with cross liability endorsement with respect to commercial, general and automobile liability policies, and PROOF of Workman's Compensation Insurance IN YOUR COMPANY'S NAME must be provided within 7 day of contract date.

*Id.* at 27.

### E. MRK'S INSURANCE POLICY WITH SENECA

MRK had a general commercial liability policy with Seneca (the "Seneca Policy" or the "Policy"). This Policy extended coverage "to include as an additional insured the person(s) or organization(s) showing in the Schedule." (*See* D.E. 4-5 at 49.) Under the Schedule, additional insured person(s) or organization(s) are those "required by written contract." *See id.* Amerisure asserts that the subcontract between Case and MRK serves as the "written contract" through which the Seneca Policy affords coverage to Walmart as an additional insured. *See id.* at ¶¶ 17–20.

If a party is included as an additional insured via the Schedule, the coverage extends "*only* with respect to *liability* for 'bodily injury' . . . *caused, in whole or in part by*" MRK's acts or omissions:

> A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule but only with respect to liability for "bodily injury" "property damage" or "personal and advertising injury" caused in whole or in part by
> 1. Your acts or omissions, or
> 2. The acts or omissions of those acting on your behalf,
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above

(D.E. 4-5 at 49 (emphases added).)

## II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations.  *Id.* at 679.  Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).  Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true.  *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III. DISCUSSION

Amerisure asserts two claims against Seneca: a claim for declaratory judgment (Count 1); and a claim for breach of contract (Count 2).  After Seneca moved to dismiss both claims, Amerisure voluntarily dismissed its declaratory judgment claim.  (*See* D.E. 22.)  In this Order, the Court addresses Seneca's motion to dismiss the breach of contract claim on grounds that Seneca does not have a duty to defend Amerisure, as the assignee of Walmart's rights under the Policy.

Although courts generally disfavor resolving contract interpretation issues at the motion to

dismiss stage, insurance coverage disputes are regularly dismissed for failing to state a claim when "a review of the insurance policy and the underlying claim for which coverage is sought unambiguously reveals that the underlying claim is not covered." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (collecting cases). This is, in part, because the duty to defend inquiry is based on whether the facts alleged in the underlying complaint can be fairly read to support coverage. *Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-CIV, 2018 WL 7291057, at *3 (S.D. Fla. Apr. 20, 2018) (citing *Goldberg*, 143 F. Supp. 3d at 1293). Here, there are no factual disputes; the parties disagree over the correct interpretation of the Seneca Policy. The Court thus finds it appropriate to resolve the duty to defend issue now.

Ultimately, "the duty to defend is determined by comparing the allegations contained within the four corners of the complaint with the language of the policy." *Goldberg*, 143 F. Supp. 3d at 1293 (citing *Jones v. Fla. Ins. Guar. Ass'n Inc.*, 908 So. 2d 435, 443 (Fla. 2005)). At this stage, the Court is generally confined to considering the Complaint and any of its attachments. *See Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, 542 F. App'x 844, 848 (11th Cir. 2013) (citing *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010)). Because the Seneca Policy and the subcontract between MRK and Case were filed by Amerisure as attachments to its Complaint (*see* D.E. 4; D.E. 4-2 at 10–44; D.E 4-5), the Court may consider the language of these documents in deciding whether Seneca has a duty to defend.

Under Florida law, which the parties agree applies here, an "insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) (citations omitted). This is so regardless of the true facts and merits of the underlying case. *Capitol Specialty Ins. Corp.*, 2018 WL 7291057, at *3 (citing *Lime Tree Vill. Cmty. Club Ass'n, Inc.*, 980

F.2d at 1405). To determine whether the insurer has a duty to defend, the Court must apply the language of the applicable policy to the facts in the complaint. *Goldberg*, 143 F. Supp. 3d at 1293. If the complaint asserts multiple bases for liability and one allows for insurance coverage while another does not, the insurer is obligated to defend the entire suit. *Lime Tree Vill. Cmty. Club Ass'n, Inc.*, 980 F.2d at 1405 (citation omitted). And if the allegations in the complaint "leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Id.*

In Florida, insurance contracts are construed according to their plain meaning. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (citation omitted). It is "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction" that an ambiguity will be construed in favor of coverage. *Id.* (citation omitted). But "if the pleadings show that there is no coverage or that a policy exclusion applies to bar coverage, the insurer has no duty to defend." *Goldberg*, 143 F. Supp. 3d at 1294 (citations omitted).

Whether a contract provision is ambiguous is a question of law for the Court to decide. *Cmty. Asphalt Corp. v. Travelers Indem. Co. of Am.*, No. 16-21758-CIV, 2017 WL 4712199, at *4 (S.D. Fla. Apr. 26, 2017) (citing *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001)). Undefined provisions are governed by "common everyday usage." *Id.* (citing *Certain British Underwriters v. Jet Charter Serv., Inc.*, 789 F.2d 1534, 1536 (11th Cir. 1986)).

To determine whether Seneca has a duty to defend Amerisure, as the assignee of Walmart's rights under the Policy, the Court must first determine whether Walmart is an additional-insured party. If it is, then the Court can decide whether the Policy extends coverage to Walmart as an additional insured for its liability in the underlying state court lawsuit. If it does, then Seneca has

a duty to defend Amerisure; but if it does not, Seneca does not have a duty to defend Amerisure, and thus Seneca's refusal to reimburse Amerisure does not breach the terms of the Seneca Policy.

### A.  ADDITIONAL INSUREDS UNDER THE SENECA POLICY

It is clear to the Court that Walmart is an additional insured under the Seneca Policy.  This Policy extends coverage "to include as an additional insured the person(s) or organization(s) showing in the Schedule."  (D.E. 4-5 at 49.)  Under the Schedule, additional insured person(s) or organization(s) are those "required by written contract."  *Id.*

The relevant written contract here is the written subcontract between Case and MRK.  That subcontract requires MRK to list Walmart as an additional insured on MRK's comprehensive general liability insurance.  (*See* D.E. 4-2 at 21.)  Article 13 of the subcontract between Case and MRK required MRK to "purchase and maintain" comprehensive general liability insurance, in the amount of $2,000,000.00, to protect MRK from claims that "may arise out of, or result from" MRK's "operations and completed operations under the Subcontract."  *Id.*  The subcontract also required MRK to "cause the commercial liability coverage" to include Walmart as an additional insured for "claims caused in whole or in part by" MRK's negligent acts or omissions during its operations.  *Id.*  And finally, under subparagraph 13.1.1 of Schedule A to the subcontract, MRK was required to list Walmart as an additional insured on MRK's Certificate of Insurance for its general liability coverage.  *See id.* at 27.

Taking these provisions together, the Court finds that Walmart is an additional insured under the Seneca Policy.  The next issue is whether the Seneca Policy extends coverage to Walmart for its liability in the underlying state court lawsuit.  This is the core dispute between the parties.

### B. <u>COVERAGE</u>

The Seneca Policy clearly and unambiguously provides that Walmart is covered as an additional insured under the Policy "*only* with respect to *liability* for 'bodily injury' . . . *caused, in whole or in part by*" MRK's acts or omissions:

> A. **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to 'liability for 'bodily injury" 'property damage" or "personal and advertising injury' caused in whole or in part by
> 1. Your acts or omissions, or
> 2. The acts or omissions of those acting on your behalf,
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above

(D.E. 4-5 at 49 (emphases added).) Seneca argues that courts analyzing similar language in additional-insured endorsements have "time and again" ruled that coverage is limited to the additional insured's *vicarious* liability for the named insured's actions, and that coverage does not extend to an additional insured for its *direct* negligence. (D.E. 11 at 12–13 (collecting Southern District of Florida rulings and a Florida Supreme Court decision).)

Amerisure's Opposition concedes that "it does not appear that any Florida court has considered whether this particular additional insured endorsement is limited to vicarious liability." (D.E. 23 at 5.) Undeterred, though, Amerisure argues that other jurisdictions to consider the endorsement here have ruled that coverage extends to an additional insured where that party is sued for its direct negligence, *so as long as* the named insured was at least partially at fault. *Id.* at 5–8 (collecting cases applying Connecticut, Maine, Maryland, and Tennessee law).

After reviewing the case law cited by the parties, the Court finds that the additional-insured endorsement in the Seneca Policy does *not* extend coverage to Walmart. This is because the *liability* imposed on Walmart in the underlying state court lawsuit was premised solely on

- 9 -

Walmart's *direct* negligence.  (*See* D.E. 4-1.)  And Florida law is clear: "to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action."  *See Gen. Asphalt Co., Inc. v. Bob's Barricades, Inc.*, 22 So. 3d 697, 699 (Fla. 3d DCA 2009) (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 423 (Fla. 1990)).  In short, then, Walmart was not held *vicariously* liable for the direct negligence of MRK, and therefore, because the *liability* was not premised on injuries "caused, in whole or in part by" MRK, it necessarily follows that Walmart is not covered as an additional insured under the Seneca Policy.  This conclusion is supported by several federal rulings and a Florida Supreme Court decision.

To start, in *Garcia v. Fed. Ins. Co.*, the Florida Supreme Court considered whether "an insurance policy providing coverage for an additional insured 'with respect to *liability because of acts or omissions*' of the named insured limit[s] coverage to instances in which the additional insured is vicariously liable for acts of the named insured?"  969 So. 2d 288, 289 (Fla. 2007) (emphasis added).  This question was answered in the affirmative.  *Id.* at 289.[1]

The Supreme Court of Florida found that the phrase "because of" in the additional-insured endorsement was "relevant" and that "there is a more circumscribed meaning to 'because of' than merely being a sequential link in the chain of events . . . .  The phrase appears to include persons or organizations held in *by way of vicarious liability* for derelictions of [the named insured]."  *Id.* at 293 (emphasis added) (quoting *Long Island Lighting Co. v. Hartford Accident & Indem. Co.*, 350 N.Y.S. 2d 967, 972 (N.Y. Gen. Term. 1973)).  Thus, the Florida Supreme Court reasoned that "[t]he *omission* of the words 'but only' in [the insurer's] policy *[did] not materially change* the

---

[1] The legal question was certified to the Florida Supreme Court by the Eleventh Circuit, which explained that "[t]he dispute . . . hinge[d] on whether the additional insured clause cover[ed] only the additional insured's vicarious liability for the acts of the named insured."  *See Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1133 (11th Cir. 2006).

*limitation of the additional insured provision to* instances of *vicarious* liability." *Id.* (emphases added). The Florida Supreme Court further explained that "the presence of the words 'because of' in [the insurer's] policy require[d] that an additional insured's liability be '*caused by*' the *acts or omissions of the named insured*." *Id.* (emphases added). In short, the Florida Supreme Court held that the insurer's policy did not cover the additional insured's "independent acts of negligence" and that "[b]ecause the accident victim's suit against [the additional insured] sought recovery only for her direct negligence, and did not allege any liability based on acts or omissions of [the named insured], [the additional insured] [was] not entitled to coverage." *Id.* at 294.

After the Florida Supreme Court decided the certified question, the Eleventh Circuit affirmed the district court's previous granting of the defendant's motion to dismiss. *See Garcia v. Fed. Ins. Co.*, 508 F.3d 1331, 1332 (11th Cir. 2007), *affirming Garcia v. Fed. Ins. Co.*, No. 05-20708-CIV, 2005 WL 8157692, at *2 (S.D. Fla. July 22, 2005). The Eleventh Circuit explained that, based on the Florida Supreme Court's decision, the policy in question was not ambiguous and that "coverage for additional insureds . . . [was] limited to instances in which the additional insured [was] vicariously liable for acts of the named insured." *Id.* (citing *Garcia*, 969 So. 2d at 289). And since the additional insured was sued for her own negligence and not the named insured's negligence, the additional insured was not covered by the terms of the policy. *Id.*

In cases with additional-insured endorsements like the one in the Seneca Policy, federal district courts applying Florida law have consistently ruled in line with *Garcia*. That is, these district courts have found that similar additional-insured endorsements did not extend coverage where the underlying lawsuit did not allege that the additional insured was vicariously liable for the direct negligence of the named insured.

For example, in *Mid-Continent Cas. Co. v. Constr. Servs. & Consultants, Inc.*, the additional-insured endorsement limited coverage to "liability directly attributable to" the named insured's performance and applied "only when" the named insured agreed by a written "insured contract" to designate the additional-insured party as such. No. 06-CV-80922, 2008 WL 896221, at *3 (S.D. Fla. Mar. 31, 2008). The district court determined that the definition of "insured contract"—which was defined as any contract where the named insured assumed liability for the additional insured for any injuries "*caused, in whole or in part, by*" the named insured—"exclude[d] from its ambit" coverage for the additional insured's own acts or omissions. *Id.* at *3–4 (emphasis added). And because the underlying state court lawsuit only alleged direct negligence against the additional insured, the district court ruled that the additional insured was not covered, and thus the insurer had no duty to defend. *Id.* at *5.

Another example is *United Rentals, Inc. v. Mid-Continent Cas. Co.*, 843 F. Supp. 2d 1309 (S.D. Fla. 2012). There, the additional-insured endorsement applied when an "insured contract" existed between the named insured and the additional insured. *Id.* at 1312. The district court determined that under the "plain language" of the "narrowly" defined term "insured contract"—*i.e.* any contract where the named insured assumed liability for the additional insured for any injuries "*caused, in whole or in part*, by" the named insured—"coverage [was] extended . . . only for vicarious liability" on behalf of the named insured. *Id.* at 1312 n.6, 1314 (emphasis added). And since the underlying state court lawsuit was "premised solely on theories of strict liability and negligence arising from [the additional insured's] own acts or omissions," the district court ruled that the coverage sought by the additional insured was "not contemplated by the plain terms of the insurance policies." *Id.* (citing *Constr. Servs. & Consultants, Inc.*, 2008 WL 896221, at *3–5).

The same conclusion was reached in *King Cole Condo. Ass'n, Inc. v. Mid-Continent Cas.*

*Co.*, 21 F. Supp. 3d 1296 (S.D. Fla. 2014). There, the additional-insured endorsement limited coverage to "liability directly attributable to" the named insured's performance of ongoing operations, and applied when the named insured agreed by written "insured contract" to designate a party as an additional insured. *Id.* at 1298. As in the last two cases discussed, the insurance policy defined "insured contract" as any contract where the named insured assumed liability for the additional insured for any injuries "*caused, in whole or in part, by*" the named insured. *Id.* at 1299 (emphasis added). Noting that this was not the first time that the court had "been called upon to interpret the identical insurance policy in materially identical cases," the district court ruled that to qualify as an additional insured under the insurance policy, the putative additional-insured party had to establish that it sought "coverage with respect to liability 'directly attributable to [the named insured's] performance' of those contracts, that is, under a theory of vicarious liability." *Id.* (citing *United Rentals, Inc.*, 843 F. Supp. 2d 1309; *Constr. Servs. & Consultants, Inc.*, 2008 WL 896221). And because the underlying case only alleged direct negligence against the additional insured, the court ruled that coverage did not extend, and thus the insurer did not have a duty to defend. *Id.*

And finally, the same conclusion was reached again in *Cmty. Asphalt Corp. v. Travelers Indem. Co. of Am.*, 2017 WL 4712199. There, the district court ruled that the additional-insured endorsement—which limited coverage to injuries "*caused by acts or omissions of*" the named insured "in the performance of" the named insured's work—"explicitly and unambiguously limit[ed] coverage for additional insureds to claims for vicarious liability." *Id.* at *2, 10 (emphasis added). And because the underlying lawsuit only alleged direct negligence against the additional insured, the district court ruled that coverage did not extend and thus the insurer did not have a duty to defend. *Id.* at *9–10 (citing *Garcia*, 969 So. 2d at 294; *United Rentals, Inc.*, 843 F. Supp. 2d at 1314; *Constr. Servs. & Consultants, Inc.*, 2008 WL 896221, at *3–5; *Bradfield v. Mid-*

*Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1229 (M.D. Fla. 2015); *White Springs Agr. Chemicals, Inc. v. Gaffin Indus. Servs., Inc.*, No. 3:11-cv-998-J-32JRK, 2014 WL 905545, at *5 (M.D. Fla. Mar. 7, 2014)).

Here, like the endorsements in all these cases, the Seneca Policy is clear and unambiguous. And like the similarly worded endorsements in all these cases, the Seneca Policy provides coverage to an additional insured "*only* with respect to *liability* for 'bodily injury' . . . *caused, in whole or in part by*" the named insured's acts or omissions. (*See* D.E. 4-5 at 49 (emphases added).) And as in all these cases, the liability imposed on Walmart in the underlying state court lawsuit was premised solely on Walmart's direct negligence. (*See* D.E. 4-1.) In other words, Walmart was *not* held *vicariously* liable for the direct negligence of MRK. And Florida law is clear that "to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action." *Gen. Asphalt Co., Inc.*, 22 So. 3d at 699 (citing *Goldschmidt*, 571 So. 2d at 423). Therefore, as the Florida Supreme Court and several other district courts interpreting similar language have concluded, because the *liability* in the underlying state court lawsuit was not imposed for injuries "caused, in whole or in part by" MRK, it necessarily follows that Walmart is not covered as an additional insured under the Seneca Policy.

Still, Amerisure insists that Walmart is an additional insured under the Policy. Amerisure argues that none of the authorities discussed above can apply here because they "are based on completely different additional insured endorsements." (D.E. 23 at 9.) It is true that the endorsements in those cases and the endorsement in the Seneca Policy are not *identical*. But this is not enough of a reason to entirely sweep aside these cases. *Cf. Garcia*, 969 So. 2d at 292 ("No Florida court has interpreted the *precise* language at issue. We have, however, considered *similar* language. . . . [And] [c]ourts from other jurisdictions have interpreted *similar* language to

arrive at the same result.") (emphases added). Moreover, the similarity of the language in the Seneca Policy and the endorsements in the previously discussed cases is self-evident. These endorsements provide coverage for additional insureds where liability is imposed for injuries:

- **(1)** "[B]ecause of acts or omissions of" the named insured, *see, e.g.*, *Garcia*, 969 So. 2d at 292–94; *Garcia*, 508 F.3d at 1332;

- **(2)** "[C]aused by acts or omissions of" the named insured, *see, e.g.*, *Cmty. Asphalt Corp.*, 2017 WL 4712199, at *2, 10; or

- **(3)** "[C]aused, in whole or in part, by" the named insured (*see, e.g.*, D.E. 4-5 at 49; *King Cole Condo. Ass'n, Inc.*, 21 F. Supp. 3d at 1299; *United Rentals, Inc.*, 843 F. Supp. 2d at 1312–14; *Mid-Continent Cas. Co.*, 2008 WL 896221, at *3–4).

Thus, Amerisure's unnuanced attempt to cast away a consensus of authority is unpersuasive.

So too is Amerisure's invitation to follow the Fourth District Court of Appeal's ruling in *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174 (Fla. 4th DCA 2015). There, the court ruled that a provision limiting coverage to bodily injuries "caused, in whole or in part, by" the named insured should not "be construed so narrowly." *Id.* at 179, 183. The court explained that "[b]y not using the term 'vicarious liability' and, instead, focusing on whether the insured . . . or those working on its behalf, 'caused' the injury, the 'language indicates that policy coverage is not limited solely to vicarious liability, but that coverage extends to situations in which liability is shared' by the insured/indemnitor and its indemnitee." *Id.* at 183 (citing *Nor–Son, Inc. v. W. Nat'l Mut. Ins. Co.*, No. A11–2016, 2012 WL 1658938, at *3 (Minn. Ct. App. May 14, 2012)). Although *Royal Crane* provides some support for Amerisure's argument, that case is inapposite here. Not only did *Royal Crane* openly apply a "relaxed standard," *id.* at 184, but also, it did not address the Florida Supreme Court's ruling in *Garcia*, *see generally id.*—which might be because *Royal Crane* "did not involve an additional insured endorsement, but rather only found that there was no 'insured contract' within the meaning of the policy" and thus there was no duty to indemnify under

the policy's indemnification provision. *See Cmty. Asphalt Corp.*, 2017 WL 4712199, at *9 (declining to follow *Royal Crane*). In any event, *Royal Crane* runs against the Florida Supreme Court's ruling in *Garcia* and the weight of authority in this District.

And finally, despite conceding that Florida law applies, the rest of Amerisure's Opposition relies extensively on cases that do not apply Florida law. (*See* D.E. 23 at 5–9 (citing *Capital City Real Estate, LLC v. Certain Underwriters at Lloyd's London*, 788 F.3d 375 (4th Cir. 2015) (applying Maryland law); *First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 660 F. App'x 30 (2d Cir. 2016) (applying Connecticut law); *Am. Guar. & Liab. Ins. Co. v. Norfolk S. Ry. Co.*, 278 F. Supp. 3d 1025 (E.D. Tenn. 2017) (applying Tennessee law); *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242 (D. Me. 2011) (applying Maine law).) The Court declines, however, to stray from the consensus of authority in this District that has applied Florida law in order to follow these non-binding out-of-circuit cases.

In short, the Seneca Policy is clear: Walmart is covered as an additional insured "*only* with respect to *liability* for 'bodily injury' . . . *caused, in whole or in part by*" MRK's acts or omissions. (D.E. 4-5 at 49 (emphases added).) Here, the *liability* imposed on Walmart in the underlying lawsuit was premised solely on Walmart's direct negligence. (*See* D.E. 4-1.) That is, Walmart was *not* held *vicariously* liable for MRK's direct negligence. And because the *liability* in the underlying lawsuit was not imposed for injuries "caused, in whole or in part by" MRK, it necessarily follows that Walmart is not covered as an additional insured under the Seneca Policy.

Therefore, Seneca does not have a duty to defend Amerisure, as the assignee of Walmart's rights under the Policy. The Court thus finds that Amerisure cannot state a claim against Seneca for breach of contract, and the breach of contract claim is accordingly **DISMISSED**.

## **CONCLUSION**

For all these reasons, it is

**ADJUDGED** that Seneca's Motion to Dismiss **(D.E. 11)** is **GRANTED**. Count 2 of the Complaint is therefore **DISMISSED**. Furthermore, Count 1 is also **DISMISSED WITHOUT PREJUDICE** in view of Amerisure's previously filed Notice of Voluntary Dismissal Without Prejudice of Count 1. (*See* D.E. 22.) Because no claims remain against Seneca, Seneca is **DISMISSED**. And because all claims against MRK are proceeding in arbitration, it is also

**ADJUDGED** that this case is **CLOSED**. As explained in the order compelling arbitration against MRK, the Court will retain jurisdiction over Amerisure's claims against MRK, and Amerisure must notify the Court by **August 31, 2020**, and every three (3) months thereafter of the status of the arbitration proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th of June 2020.

_____
    FEDERICO A. MORENO
    UNITED STATES DISTRICT JUDGE.

Copies furnished to:

Counsel of Record